UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

|  |  |
|---|---|
| TROY EDWIN NEHLS, | |
| Plaintiff, | |
| v. | Case No. 3:25-cv-112 |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**<u>DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE</u>**

# **Table of Contents**

TABLE OF AUTHORITIES ................................................................................................ i

INTRODUCTION ........................................................................................................... 1

FACTUAL ALLEGATIONS .............................................................................................. 2

    I.      FACTUAL BACKGROUND ................................................................... 2

    II.     PROCEEDINGS ..................................................................................... 5

STANDARDS OF REVIEW UNDER RULES 12(b)(1) and 12(b)(6) ......................................... 5

ARGUMENT ................................................................................................................. 6

    I.      PLAINTIFF FAILS TO STATE CLAIMS FOR INVASION OF PRIVCY AND TRESPASS AND THUS FAILS TO ESTABLISH SUBJECT MATTER JURISDICTION ....................................................... 6

        A.   Plaintiff fails to state a claim for intrusion upon seclusion .................................... 7

        B.   Plaintiff fails to plausibly allege a claim for publication of private facts. ........... 13

        C.   Plaintiff fails to state a claim for trespass. .......................................................... 17

    II.     PLAINTIFF'S CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW. .............................................................................................. 19

    III.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER VENUE TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA. ....................................................................................... 20

        A.   Legal Standard .................................................................................................... 20

        B.   Argument ............................................................................................................ 21

CONCLUSION ............................................................................................................. 26

**CERTIFICATE OF SERVICE** ...................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Rainbow Inn, Inc.*,
312 F.R.D. 23 (D.D.C. 2015) ...................................................................... 9, 12

*Armstrong v. Thompson*,
80 A.3d 177 (D.C. 2013) ........................................................................... 14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................ 5, 6, 9, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 5, 6

*Brownback v. King*,
592 U.S. 209 (2021) ........................................................................................... 7

*Conejo v. Am. Fed'n of Gov't Emps.*,
377 F. Supp. 3d 16 (D.D.C. 2019) ................................................................. 14

*Cortez v. Brad Drake Constr., LLC*,
No. EP-15-CV-346-KC, 2016 WL 1312636 (W.D. Tex. Apr. 4, 2016) ................ 21, 22

*Danai v. Canal Square Assocs.*,
862 A.2d 395 (D.C. 2004) .............................................................. 8, 10, 11, 13

*Democracy Partners v. Project Veritas Action Fund*,
453 F. Supp. 3d 261 (D.D.C. 2020) ............................................................... 19

*Doe v. Bernabei & Wachtel, PLLC*,
116 A.3d 1262 (D.C. 2015) ...................................................................... 13, 15

*Dresbach v. Doubleday & Co.*,
518 F. Supp. 1285 (D.D.C. 1981) ................................................................... 11

*Elliott v. Healthcare Corp.*,
629 A.2d 6 (D.C. 1993) ................................................................................... 14

*F.D.I.C. v. Meyer*,
510 U.S. 471 (1994) ................................................................................ 6, 7, 19

*Falconi-Sachs v. LPF Senate Square, LLC*,
142 A.3d 550 (D.C. 2016) ............................................................................... 19

i

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) ....................................................................... 6

*Garay v. Liriano*,
943 F. Supp. 2d 1 (D.D.C. 2013) ......................................................... 12, 18

*Greenpeace, Inc. v. Dow Chem. Co.*,
97 A.3d 1053 (D.C. 2014) ........................................................................ 18

*Grunseth v. Marriott Corp.*,
872 F. Supp. 1069 (D.D.C. 1995) .............................................................. 17

*Harrison v. Washington Post Co.*,
391 A.2d 781 (D.C. 1978) ......................................................................... 16

*Helton v. United States*,
191 F. Supp. 2d. 179 (D.D.C. 2002) .......................................................... 19

*In re Volkswagen AG (Volkswagen I)*,
371 F.3d 201 (5th Cir. 2004) ..................................................................... 23

*In re Volkswagen of Am., Inc. (Volkswagen II)*,
545 F.3d 304 (5th Cir. 2008) .......................................................... 20, 21, 22

*Klugel v. Small*,
519 F. Supp. 2d 66 (D.D.C. 2007) ............................................................... 8

*Maynard v. Melton*,
Case No. 17-02612, 2021 WL 6845008 (D.D.C. Apr. 7, 2021) ............... 14, 15

*Nix v. Hoke*,
139 F. Supp. 2d 125 (D.D.C. 2001) ........................................................... 14

*Paige v. Drug Enforcement Admin.*,
665 F.3d 1355 (D.D.C. 2012) .............................................................. 11, 16

*Paige v. U.S. Drug Enforcement Admin.*,
818 F. Supp. 2d 4 (D.D.C. 2010) ............................................................... 16

*Paterson v. Weinberger*,
644 F.2d 521 (5th Cir. 1981) ....................................................................... 5

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) .......................................................................... 21, 22

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ................................................................... 5

*Robinson v. Farley*,
    264 F. Supp. 3d 154 (D.D.C. 2017) ...................................................... 17

*Ruiz ex rel. E.R. v. United States*,
    No. 13-CV-1241, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ........... 23, 24

*Saraw P'ship v. United States*,
    67 F.3d 567 (5th Cir. 1995) ..................................................................... 5

*Tinsely v. Widener*,
    150 F. Supp. 2d 7 (D.D.C. 2001) .......................................................... 19

*Townsend v. United States*,
    236 F. Supp. 3d 280 (D.D.C. 2017) ...................................................... 10

*Truman v. United States*,
    26 F.3d 592 (5th Cir. 1994) ..................................................................... 6

*Turpin v. Ray*,
    613 F. Supp. 3d 186 (D.D.C. 2020) .................................................. 17, 18

*United States v. Miller*,
    425 U.S. 435 (1987) ............................................................................. 10

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ............................................................................. 20

*Vasquez v. Bridgestone/Firestone, Inc.*,
    325 F.3d 665 (5th Cir. 2003) ................................................................ 25

*Wolf v. Regardie*,
    553 A.2d 1213 (D.C. 1989) ............................................................. passim

**Statutes**

28 U.S.C. § 1346(b)(1) ................................................................................. 25

28 U.S.C. § 1402(b) .................................................................................... 22

28 U.S.C. § 1404 ........................................................................... 1, 2, 3, 20

28 U.S.C. § 1404(a) ............................................................................... 20, 21

iii

28 U.S.C. § 1346(b) .................................................................................. 1, 7, 20

**Rules**

Fed. R. Civ. P. 8(a)(2) ...................................................................................... 6

Fed. R. Civ. P. 45 ............................................................................................ 24

Federal Rules of Civil Procedure 12(b)(1) ....................................................... 1

The United States of America moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In the alternative, the United States moves to transfer venue pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

The claims in this case arise out of allegations that a U.S. Capitol Police ("USCP") officer, while on patrol of the U.S. Capitol Building, entered Congressman Troy Nehls' office and photographed a whiteboard that was displayed in the office, and which contained the Congressman's notes on legislation that he intended to present to Congress. *See generally* Complaint (Compl.), ECF No. 1 ¶¶ 8-13.  Plaintiff asserts claims for invasion of privacy and trespass pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2761, *et. seq.*, and various constitutional claims.  Specifically, as to the invasion of privacy claims, Plaintiff asserts claims for intrusion upon seclusion and the publication of private facts.  The Court should dismiss Plaintiff's claims for lack of jurisdiction and failure to state a claim.

First, Plaintiff has not stated a claim for intrusion upon seclusion because he fails to plausibly allege that there was an intrusion into a place where Plaintiff secluded himself, or that any alleged intrusion would be highly offensive to a reasonable person.

Second, Plaintiff fails to state a claim for the publication of private facts because he does not plausibly allege that private facts were disclosed or that any disclosure would be highly offensive.

Third, Plaintiff fails to state a claim for trespass because he fails to plausibly allege that he retained an exclusive possessory right to the congressional office he was assigned.

Fourth, because the United States has not waived sovereign immunity for constitutional claims, the Court lacks subject matter jurisdiction over those claims.

Accordingly, Plaintiff's claims must be dismissed.

In the alternative, the Court should transfer venue of this case to the District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a). The alleged acts that form the basis of Plaintiff's claims occurred within the District of Columbia, and the relevant witnesses and evidence are located there. Thus, for the convenience of parties and witnesses, and in the interest of justice, transfer is warranted.

## FACTUAL ALLEGATIONS[1]

## I.    FACTUAL BACKGROUND

The USCP is a federal law enforcement agency responsible for policing the United States Capitol Buildings and surrounding areas, including buildings adjacent to the Capitol Building. Compl. ¶ 6. Officers and agents of the USCP are authorized to make arrests within the Capitol Buildings and on the surrounding grounds for violations of any laws of the United States or the District of Columbia. *Id*. As part of their policing duties,

---

[1]  For purposes of this motion, Defendant relies on the well-pleaded facts alleged in the Complaint, which are assumed to be true solely for the purposes of the motion to dismiss, and materials incorporated into the Complaint by reference or of which judicial notice may be taken.

USCP officers patrol buildings to ████████████████████████████████

████████████████████████." [2]  Exh. A at 14.  Pursuant to the USCP's standard

operating procedures at the time, USCP officers patrolled buildings ████████

████████████████████████████████████████████████████████████

████████████████████████████"  *Id*. at 13.  ████████████████████

████████████████████████████████████████████████████

████████████████████████████."  *Id*.  Building checks ███████████████

████████████████████████████"  *Id*. at 16.  ██████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████             *Id*.

    Plaintiff is a sitting Congressman who represents the people of the 22nd Election

District in the State of Texas.  Compl. ¶ 3.  As a Congressman, Plaintiff was provided

with an office in the Longworth House Office Building in Washington D.C., which is

located adjacent to the United States Capitol.  *Id*. ¶ 7.  The office was used by the

---

[2]  The Complaint expressly cites to—and derives numerous allegations from—a
May 12, 2022 report issued by the USCP Office of Inspector General, entitled,
*Inquiry into Circumstances Surrounding the PD-76 Stop or Contact Report for
Longworth House Office Building Room Number 1104 on November 20, 2021
(Investigative Number: 2022-I-0005)* ("OIG Report") (Exhibit A).  *Compare* Compl.
¶¶ 15-20 *with* OIG Report at 2-10.  Because the OIG Report is incorporated by
reference in—and central to—the allegations in the Complaint, the Court may consider it
in resolving the motion to dismiss.  *See infra*, § Standards of Review under Rules
12(b)(1) and 12(b)(6).  It is attached in full but filed under seal out of an abundance of
caution in light of Plaintiff's allegations that the writings at issue in this case are private,
and the report contains sensitive law enforcement information.

Congressman and several members of his staff.  *See id.* ¶¶ 9, 17-18.  Additionally, janitorial staff routinely entered the office at night while the Congressman and his staff were not present.  *See id.* ¶ 14(b).  In the office, Plaintiff displayed a whiteboard that contained notes on legislation that Plaintiff intended to present to Congress.  *Id.* ¶ 10, 25.

On Saturday, November 20, 2021, Officer Dias, a member of the USCP, was on patrol when he entered Plaintiff's congressional office.  *Id.* ¶¶ 11, 13.  While in the office, Officer Dias photographed the whiteboard containing Plaintiff's notes.  *Id.* ¶¶ 11, 13.  After leaving the office, Officer Dias completed a PD-76, Stop and Contact Report, which reflected that he entered Plaintiff's office after finding the door open and no one inside.  *Id.* ¶ 13.  The report further stated that Officer Dias photographed the visibly displayed whiteboard because he believed it contained suspicious writings mentioning body armor and a map of the Rayburn building.  *Id.*[3]

On Tuesday, November 23, 2021, the Stop and Contact Report, with the attached photograph, was entered into the USCP's record management system.  *Id.* ¶ 20.  Plaintiff contends that the entry of this report into the USCP's internal record system constitutes a publication of private facts.  *Id.* ¶ 28.

---

[3] Although ultimately not material to the defenses raised in this motion, Plaintiff surmises—but offers no well-pleaded allegations in support—that the entry into his office actually was an act of retaliation against him for vocal criticisms he lodged against the agency.  *See id.* ¶¶ 7-12, 25-35.

## II.    PROCEEDINGS

On October 23, 2023, Plaintiff submitted an administrative claim to the USCP, which he subsequently amended on November 21, 2023.  *Id*. ¶ 5.  On April 10, 2025, Plaintiff filed the instant action asserting claims for invasion of privacy and trespass pursuant to the FTCA, and various constitutional claims.  *See generally* Compl. *Id*. ¶¶ 25-35.  Plaintiff maintains that he suffered mental and emotional distress, humiliation, and anxiety; his reputation was damaged; and his ability to perform his job was impaired.  *Id*. ¶¶ 27, 29, 35.  Plaintiff seeks $2.5 million in monetary damages.

### STANDARDS OF REVIEW UNDER RULES 12(b)(1) and 12(b)(6)

A motion to dismiss under Rule 12(b)(1) is a threshold challenge to the Court's subject matter jurisdiction.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  The plaintiff bears the burden to establish the court's jurisdiction over the complaint.  *Id.*  Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  In a facial attack, as the United States brings here, the allegations in the complaint are taken as true*. See Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

Under Rule 12(b)(6), "a party may challenge the sufficiency of a complaint on the grounds that it fails to state a claim upon which relief can be granted."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a complaint must, at a minimum, assert a nonconclusory factual matter sufficient to "nudge [its] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  The Complaint cannot overcome the United States' motion to dismiss for

failure to state a claim unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' such that a court may 'draw reasonable inference that the defendant is liable for misconduct alleged.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556, 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown— that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When considering a motion to dismiss for failure to state a claim, the court accepts as true the facts alleged in the complaint. *See Townsend v. United States*, 236 F. Supp. 3d 280, 296 (D.D.C. 2017). Additionally, a court considers the complaint in its entirety, as well as documents "incorporated into the complaint by reference and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotations omitted).

## ARGUMENT

## I. PLAINTIFF FAILS TO STATE CLAIMS FOR INVASION OF PRIVCY AND TRESPASS AND THUS FAILS TO ESTABLISH SUBJECT MATTER JURISDICTION

In an action against the federal government, a plaintiff must identify a claim as to which the government has waived its sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (describing sovereign immunity as "jurisdictional in nature"). Section 1346(b) of Title 28 contains the following six requirements—all of which must

be satisfied in order for an action to qualify within the FTCA's jurisdictional grant: the claim must be "'[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b) (bracketed numerals added by the Court)). Thus, a failure to plausibly allege any of these six elements constitutes not only a failure to state a claim, but also a lack of subject matter jurisdiction over the claim. *See Brownback v. King*, 592 U.S. 209, 212 (2021) (quoting *Meyer*, 510 U.S. at 477).

Here, Plaintiff fails to plausibly allege the sixth element—*i.e.*, that the United States, if a private person, would be liable for invasion of privacy or trespass under the law of the District of Columbia—the place where the acts and omissions forming the basis of Plaintiff's claims allegedly occurred. *See* 28 U.S.C. § 1346(b). Accordingly, Plaintiff's claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6).

**A. Plaintiff fails to state a claim for intrusion upon seclusion.**

"Invasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded." *Wolf v. Regardie*, 553 A.2d 1213, 1216-17 (D.C. 1989). Under District of Columbia law, the four categories of invasion of privacy claims are: (1) intrusion upon seclusion; (2)

public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name and likeness for another's benefit. *See Wolf*, 553 A.2d at 1216-17. As noted, Plaintiff brings invasion of privacy claims for categories (1) and (2).

"The tort of intrusion upon seclusion has three elements: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person." *Id.* at 1217 (citations and internal quotations omitted).

Plaintiff's intrusion upon seclusion claim must be dismissed because he does not plausibly allege the second and third elements of the claim—an intrusion into a place where Plaintiff secluded himself or into his private concerns; or that the alleged intrusion would be highly offensive to a reasonable person.[4]

### 1. Plaintiff fails to plausibly allege an intrusion into a place where Plaintiff secluded himself or into his private concerns.

To adequately plead the second element of an intrusion claim, Plaintiff must establish an "invasion or physical intrusion was into a place where [Plaintiff] secluded [himself], or into [his] private or secret concerns." *Danai v. Canal Square Assocs.*, 862

---

[4] For purposes of the instant motion only, the United States does not challenge the sufficiency of Plaintiff's allegations of a physical intrusion.

A.2d 395, 400 (D.C. 2004) (internal quotations omitted)).  Plaintiff, however, fails to

make the requisite showing of seclusion.

In Count I, Plaintiff sets forth two affirmative acts that he alleges constitute an

intrusion into his seclusion.  First, he alleges that Officer Dias intruded upon his seclusion

by entering Plaintiff's "private office" without authorization.  Compl. ¶ 25.  But this

allegation cannot suffice for an intrusion claim because it is entirely conclusory, and the

Complaint is otherwise devoid of factual allegations establishing that Plaintiff reasonably

considered his congressional office to be private, *i.e.* a place of seclusion.  *See Iqbal*, 556

U.S. at 678; *see generally* Compl.  To the contrary, the Complaint is replete with

allegations establishing that the congressional office was frequented by individuals other

than Plaintiff.  For instance, the Complaint provides that a cleaning crew routinely

entered the office each night; Plaintiff's staff had unfettered access to the office; Plaintiff

was aware of individuals accessing the office even when he was not present; and USCP

patrolled the building ███████████████████.  *See* Compl. ¶¶ 14(b), 17-18;

Exh. A. at 13.  "Ostensibly, many people pass[ed] through [the office] each day,

including," likely, members of the public there to meet with the congressman.  *Alvarado*

*v. Rainbow Inn*, *Inc.*, 312 F.R.D. 23, 32-33 (D.D.C. 2015).  As such, Plaintiff's office is

not "a private zone of seclusion which society considers sacrosanct and insulated from

the peering eyes and cocked ears of insensitive citizens."  *Wolf*, 553 A.2d at 1220.

Moreover, entry into a congressional office, that is frequented by others, is distinct

from the types of intrusions that are normally actionable as an intrusion upon seclusion

claim.  *See, e.g.*, *id*. at 1218.  Examples of actionable intrusions include peeping through

windows or into some other locations in which a plaintiff has chosen to seclude himself; opening personal mail; eavesdropping on private conversations; entering a plaintiff's home without permission or searching his or her belongings; examining a plaintiff's private bank account; or other invasions of that nature. *Id*. Such examples demonstrate an individual's clear intent to seclude oneself or belongings. In contrast, here, Plaintiff shared his office with staff members and he was keenly aware of people entering and/or using the office when he was not present. *See, e.g*., Compl. ¶ 14(b). Given these allegations, one cannot reasonably conclude that Plaintiff "secluded" himself in the congressional office.

Plaintiff next alleges that Officer Dias intruded upon his seclusion by photographing his private notes. Compl. ¶ 25. But this allegation similarly fails to establish a seclusion because Plaintiff could not have had a reasonable expectation of privacy for writings contained not only in a well-traversed office but on a whiteboard visibly and prominently displayed in an area frequented by other people, including those who were not members of the Congressman's staff. *See, e.g., id*. ¶ 14(b); *see also Danai*, 862 A.2d at 401 (noting that a plaintiff had "no legitimate expectation of privacy in the invaded place"); *Townsend*, 236 F. Supp. 3d at 323-24 (providing that, while employees may have a reasonable expectation of privacy, that "expectation typically evaporates when information 'is revealed to a third party, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence in the third party will not be betrayed.'") (quoting *United States v. Miller*, 425 U.S. 435, 443 (1987)).

Further, Plaintiff fails to plausibly allege the notes contained his "private or secret concerns." *Danai*, 862 A.2d at 401. While the Complaint does include allegations that the notes were "private" and held "confidential thoughts . . . about legislation," these allegations are wholly conclusory and are not supported by any factual detail. *See Iqbal*, 556 U.S. at 678. Rather, the remaining factual allegations establish that the notes could not have been considered private because they did not pertain to Plaintiff's private life. *See Dresbach v. Doubleday & Co.* 518 F. Supp. 1285, 1287 (D.D.C. 1981) (noting the tort of invasion of privacy concerned one's private life, habits, acts, and relations); *Paige v. Drug Enforcement Admin.*, 665 F.3d 1355, 1362-63 (D.D.C. 2012) (listing examples of private facts, including "most details of a man's life in his home") (quoting Restatement § 652D cmt. b)). And, Plaintiff readily admitted to openly discussing the notes with members of his staff and that he intended to present the legislation to Congress. *See* Compl. ¶ 10, 25. Accordingly, one simply cannot reasonably categorize Officer Dias' actions as an intrusion on Plaintiff's private or secret concerns. *See Wolf*, 553 A.2d at 1218 (stating that "where the defendant did not actually delve into a plaintiff's private concerns, or where the . . . activities were already known or public, there can be no liability.").

Because Plaintiff fails to plausibly allege that his office was a place of seclusion or that his notes visibly displayed on a whiteboard contained his "private or secret concerns," Plaintiff fails to state a claim for intrusion upon seclusion.

**2. Plaintiff fails to plausibly allege Officer Dias' entry into a congressional office would be highly offensive to an ordinary, reasonable person.**

The claim also fails because Plaintiff does not plausibly allege that the intrusion would be highly offensive to an ordinary person. *See Wolf*, 553 A.2d at 1219 ("[T]he third requisite for establishment of liability is that the interference with the plaintiff's seclusion must be substantial and highly offensive to the ordinary, reasonable person.").

Here, considering all of the allegations in the Complaint, one cannot reasonably infer that Officer Dias' actions in entering the office or photographing the whiteboard would highly offend an ordinary, reasonable person. First, it is apparent that Plaintiff did not have a reasonable expectation of privacy in his congressional office. Staff members, cleanings crews, and likely members of the public routinely entered Plaintiff's office, and he was aware of the entries. *See* Compl. ¶¶ 14(b), 17-18; *see also Alvarado*, 312 F.R.D. at 32-33 (finding intrusion into a non-private location cannot realistically offend anyone's privacy concerns).

Second, patrolling the building and  is part of the standard responsibilities of a USCP officer, and it was in accordance with USCP policy

. *See* Compl. ¶ 13; *see also* Exh. A. at 13. Thus, this case is distinguishable from cases where warrantless entries resulted in a finding of offensiveness. *Cf. Garay v. Liriano*, 943 F. Supp. 2d 1, 24-25 (D.D.C. 2013) (finding a

warrantless entry into a plaintiff's apartment, where she had secluded herself, to be offensive when exigent circumstances were not present).

And, finally, because Plaintiff's notes did not concern matters of a "personal nature," and, instead, only addressed legislation to be presented to Congress, it is a far fetch to say that a reasonable person would be offended if the information was in fact intruded upon. *See Danai*, 862 A.2d at 401.

Accordingly, because Plaintiff fails to plausibly allege that Officer Dias' entry into the office or photographing of the whiteboard would be highly offensive to an ordinary, reasonable person, the claim must be dismissed.

### B. Plaintiff fails to plausibly allege a claim for publication of private facts.

Plaintiff's other invasion of privacy claim, based on the publication of private facts, also requires dismissal. In the District of Columbia, a plaintiff must set forth five elements for an invasion of privacy claim based on the publication of private facts: "(1) publicity, (2) absent any waiver or privilege, (3) given to private facts, (4) in which the public has no legitimate concern, (5) and which would be highly offensive to a reasonable person of ordinary sensibilities." *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1267 (D.C. 2015) (citing *Wolf*, 553 A.2d at 1220). Plaintiff, however, fails to allege sufficient facts to establish that the publicity of private facts occurred or that any alleged publication would be highly offensive to a reasonable person.[5]

---

[5] For purposes of the instant motion only, the United States does not challenge the sufficiency of Plaintiff's allegations of waiver or privilege and public concern.

**1. Plaintiff fails to plausibly allege the publicity of private facts.**

The publicity element requires a communication of private facts "which reach[], or is sure to reach the public." *Elliott v. Healthcare Corp.*, 629 A.2d 6, 9 (D.C. 1993); *see also Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013) (stating that a matter is publicized if it is "communicated to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."). Generally, disseminating information to a "single person or even to a small group of persons" does not satisfy the publicity requirement. *Maynard v. Melton*, Case No. 17-02612, 2021 WL 6845008 at *7 (D.D.C. Apr. 7, 2021) (internal quotations omitted); *see also Conejo v. Am. Fed'n of Gov't Emps.*, 377 F. Supp. 3d 16, 33 (D.D.C. 2019) (noting that "substantial certainty [that a matter will become public knowledge] requires a 'broader dissemination than a mailing of a handful of employees at a single agency.'") (quoting *Armstrong*, 80 A.3d at 189)); *Nix v. Hoke*, 139 F. Supp. 2d 125, 133-34 (D.D.C. 2001) (finding that distributing tapes to a few residents, a police officer, and various attorneys was not sufficient to plead the publicity element). Thus, to sufficiently allege publicity, Plaintiff must allege that private facts were distributed to the public at large or, at a minimum, to so many people that one can infer the information will become public. Plaintiff comes nowhere close to meeting this requirement.

On this point, Plaintiff alleges only that USCP officers "[e]ntering and searching [Plaintiff's] office, photographing his whiteboard, and placing a report of his suspected criminal activities in the permanent record of the USCP . . . amounted to the wrongful publication of private facts." Compl. ¶ 28. But this allegation does not suffice to

establish publicity because Plaintiff does not allege that a large number of people viewed the report or photograph of the whiteboard, or that it was at all likely that a large group of people—beyond those that Plaintiff, himself, already made the notes available to—would view them.  *See Maynard*, 2021 WL 6845008 at \*7-8 (finding the plaintiff did not adequately allege publicity where she did not allege how many people received text messages or that a photo was communicated to a large group).  Furthermore, the remaining allegations in the Complaint establish that only a handful of USCP officers viewed the Stop and Contact report or the photograph, and there is no indication that the information would go beyond those few employees.  *See, e.g.*, Compl. ¶20.  Accordingly, the Complaint's factual allegations are insufficient to directly establish publicity or to support an inference that it was substantially certain the information would eventually become public.  *See Armstrong*, 80 A.3d at 189 (noting that substantial certainty requires broader dissemination than to a handful of employees at a single agency).

Additionally, even if publicity were sufficiently alleged, Plaintiff fails to plausibly allege that "private facts" were divulged.  *See Doe*, 116 A.3d at 1266-67 (noting that the tort is rooted in giving publicity to a person's private life).  As noted above, *see supra* Argument, § I.A.1, Plaintiff's Complaint makes clear just the opposite.  Namely, that Plaintiff prominently displayed the legislative notes on a whiteboard in an office that was frequented by staff members and janitorial staff, s*ee, e.g.*, Compl. ¶ 14(b) ("It was the practice and habit of the cleaning crew to enter the private congressional offices with a key . . . ."), and which USCP officers ████████████████████████████

████.  *See, e.g.*, Exh. A at 13 (████████████████████████████

███ ).  Given this public display, Plaintiff cannot reasonably assert that the whiteboard contained "private facts" meant only for himself because there is no privacy interest in "preventing the further publicity of what Plaintiffs themselves left open to the public eye." *Harrison v. Washington Post Co.*, 391 A.2d 781, 784 (D.C. 1978)

Nor can one infer that the notes relate to Plaintiff's private life. *See Paige*, 665 F.3d at 1362-63 (listing "sexual relations, family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, and most details of man's life at home" as examples of private facts).  The Complaint makes clear that the notes did not relate to Plaintiff's home or personal matters but, instead, pertained to legislation that Plaintiff intended to present to Congress.  *See* Compl. ¶¶ 10, 25.[6]  Thus the information at issue in this case is not the type generally encompassed by a publicity claim.  *See Paige*, 665 F.3d at 1362-63.  Accordingly, Plaintiff has failed to plausibly allege that the publicity of private facts occurred.

### 2. Plaintiff fails to plausibly allege any publicity was highly offensive.

Neither can Plaintiff plausibly allege that publicity of the photograph or report would be highly offensive to a reasonable person.  This is because the alleged "private facts" (legislative notes) contained in the photograph and the Stop and Contact Report in no way related to Plaintiff's private life and thus one cannot reasonably infer that publicity of the facts would cause embarrassment or

---

[6] To the extent Plaintiff attempts to rely on constitutional provisions to support Count II, the claim fails as a matter of law.  *See infra* Argument, § II; *see also* Compl. ¶ 28 (arguing the notes were protected by the Speech and Debate clause, the First Amendment, and the Fourth Amendment).

humiliation. *See Paige v. U.S. Drug Enforcement Admin.*, 818 F. Supp. 2d 4, 17 (D.D.C. 2010) ("[H]ighly offensive matters generally relate to the intimate details of a person's life, sexual relations, and other personal matters"); *Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1075-76 (D.D.C. 1995) (finding disclosure of receipts could not be highly offensive because the receipts did not contain private facts about the plaintiff). Additionally, Plaintiff's own display of the information in an office frequented by staff members, janitorial staff, and likely members of the public undercuts any claim that publication of the information would be highly offensive to a reasonable person. *See supra* Argument, § I.A.2. Plaintiff cannot plausibly allege offensiveness where he openly displayed the notes in a location frequented by others.

For these reasons, Plaintiff has failed to state a claim for invasion of privacy based on the alleged publication of private facts and therefore the claim must be dismissed.

### C. Plaintiff fails to state a claim for trespass.

Under District of Columbia law, "the tort of trespass consists of 'the intentional intrusion of a person or thing upon property that invades and disrupts the owner's exclusive possession of that property.'" *Turpin*, 613 F. Supp. 3d 186, 215 (D.D.C. 2020) (quoting *Robinson v. Farley*, 264 F. Supp. 3d 154, 163 (D.D.C. 2017)). A plaintiff must plead three elements for a trespass claim: (1) an unauthorized entry (2) onto the plaintiff's property (3) that interferes with the plaintiff's possessory interest. *Id.* Here, Plaintiff's trespass claim fails because he does not adequately plead a possessory right to the property.

Plaintiff fails to adequately plead a requisite possessory interest in the congressional office.  In general, a "possessory interest is defined as the present right to control property, including the right to exclude others, by a person who is not necessarily the owner." *Greenpeace, Inc. v. Dow Chem. Co*., 97 A.3d 1053, 1060 (D.C. 2014) (internal quotations omitted).  Mere permission to occupy or use the property does not create a possessory interest, "the operative question is an individual's ability to control and exclude others using the property." *Turpin*, 613 F. Supp. 3d at 216.  Further, the possessory interest must be "e*xclusive*." *Id.* (emphasis added); *see also Garay*, 943 F. Supp. 2d at 25 (noting a trespass must invade the owner's exclusive possession of the property) (internal citation omitted).  Nowhere in the Complaint does Plaintiff allege that he had exclusive control over who entered the office, and the well-pleaded facts in the Complaint establish that other individuals used or entered the office in his absence.  *See* Compl. ¶¶ 9, 14(b), 18.

Indeed, USCP policy provides even further evidence of Plaintiff's lack of an exclusive possessory interest in the congressional office.  The USCP are responsible for ensuring the protection of congressional property and, ███████████████████ ███████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████ Exh. A. at 13. ███████████████████ ███████████████████████████████████████████ ████████████████. *Id*.  Such a policy demonstrates that Plaintiff did not have

exclusive control because the USCP also maintained an interest in the office to ensure the protection of congressional property/persons.

Thus, one cannot reasonably conclude that Plaintiff, alone, retained a possessory interest in the property. *See Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 554 (D.C. 2016) (stating that factual allegations must be "enough to raise a right to relief above the speculative level.") (internal quotations omitted)); *Democracy Partners v. Project Veritas Action Fund*, 453 F. Supp. 3d 261, 277 (D.D.C. 2020) (finding plaintiffs failed to establish a trespass where they could not prove an exclusive possessory interest to a suite).

For these reasons, Plaintiff fails to plead a claim for trespass under District of Columbia law and the claim must be dismissed.

## II.    PLAINTIFF'S CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW.

In Count IV, and throughout the Complaint, Plaintiff appears to allege claims based on the alleged violation of his constitutional rights. *See* Compl. ¶¶ 32-35 (alleging violations of the Fourth Amendment and the Speech and Debate Clause). The law, however, is clear that constitutional tort claims cannot be brought against the United States because the FTCA does not waive the sovereign immunity of the United States for constitutional claims. *See Meyer*, 510 U.S. at 477-78 ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."); *Helton v. United States*, 191 F. Supp. 2d 179, 180 (D.D.C. 2002) ("[T]he law is clear that the FTCA does not waive sovereign immunity of the United

States for constitutional claims."); *Tinsely v. Widener*, 150 F. Supp. 2d 7, 12 (D.D.C. 2001) ("The FTCA effects a limited waiver of sovereign immunity for certain torts committed by federal employees . . . . The FTCA does not extend this waiver of sovereign immunity to constitutional tort claims").  In light of this well-settled law, it is clear that Plaintiff's constitutional claims must be dismissed.

## III.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER VENUE TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.

In the alternative to ruling on the motion to dismiss, the Court should transfer venue of this case to the District Court for the District of Columbia pursuant to 28 U.S.C. § 1404.  It is uncontested that all of the alleged events occurred in the District of Columbia and therefore District of Columbia law determines the United States' potential liability.  28 U.S.C. § 1346(b).  Although venue in this District is permissible given Plaintiff's residence here, Compl. ¶ 3, "[f]or the convenience of parties and witnesses, [and] in the interest of justice," transfer to the District of Columbia is warranted under 28 U.S.C. § 1404.  28 U.S.C. § 1404(a).  The acts that form the basis of Plaintiff's claims occurred within the District of Columbia and most of the relevant witnesses and evidence are located there.  By contrast, the only connection to this District is Plaintiff's residency.  Thus, the Court should transfer the action to the District Court for the District of Columbia.

### A. Legal Standard

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district

or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation omitted). The movant bears the burden to show good cause for a change of venue. *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 n.10 (5th Cir. 2008). In order to show good cause, the moving party must clearly demonstrate that transfer is for the convenience of the parties and witnesses, and in the interest of justice. *Volkswagen II*, 545 F.3d at 315. "[D]istrict Courts have broad discretion in deciding whether to order a transfer." *Id*. at 311 (internal quotations omitted).

### B. Argument

"In determining whether to transfer a case pursuant to § 1404(a), a district court must make two determinations." *Cortez v. Brad Drake Constr*., LLC, Case No. EP-15-CV-346-KC, 2016 WL 1312636, at *2 (W.D. Tex. Apr. 4, 2016). First, the court must decide whether the district to which a transfer is sought would have been proper in the first instance. *Volkswagen II*, 545 F.3d at 312. Second, "the Court must determine whether a change of venue would be convenient for the parties and witnesses, and in the interest of justice." *Cortez*, 2016 WL 1312636, at *2 (citing 28 U.S.C. § 1404(a)).

"Courts define 'convenience' by reference to both private and public interest factors." *Id.* (citing *Volkswagen II*, 545 F.3d at 315). The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and

(4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary conflict of laws of the application of foreign law. *Volkswagen II*, 545 F.3d at 315.  None of these factors, however, are dispositive. *Cortez*, 2016 WL 1312636 at *2.

**1.  Venue is proper in the District Court for the District of Columbia.**

The preliminary question under § 1404(a) is whether a civil action "might have been brought" in the destination venue. *Volkswagen II*, 545 F.3d at 312.  Plaintiff's claims in the instant action are brought under the FTCA. *See* Compl. ¶ 1.  Pursuant to 28 U.S.C. § 1402(b), "[a]ny civil action on a tort claim against the United States under [the FTCA] may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).  Plaintiff's suit thus could have been brought either in this district, where he resides, or in the District of Columbia, where the acts and omissions complained of occurred.

Because the acts and omissions that allegedly give rise to Plaintiff's claim occurred in the District of Columbia, this action could have been filed in the District Court for the District of Columbia.  Thus, prong one of § 1404(a) is satisfied.

**2. The majority of § 1404(a) factors weigh in favor of transfer.**

Many of the private concerns weigh in favor of transfer, namely: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; and (3) the cost of attendance for willing witnesses. *See Volkswagen II*, 545 F.3d at 315 (citing *Piper Aircraft Co.,* 454 U.S. at 241 n.6). Additionally, the public concerns of having localized interests decided at home and the familiarity of the forum with the law that will govern the case weigh in favor of transfer. *See Volkswagen II*, 545 F.3d at 315.

**i.    *The relative ease of access to proof and the cost of attendance for willing witnesses.***

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 204-05 (5th Cir. 2004).  Most of the likely witnesses to the challenged conduct reside at least hundreds of miles from this District and are, instead, located in or near the District of Columbia.  While it is sometimes presumed that employees of the federal government are available in any venue, this does not diminish the burden on the government to produce government witnesses who work in Washington, D.C. for trial in Texas.  This is especially true where the potential witnesses are law enforcement officers with important national security and/or investigative duties.  Therefore, this factor strongly favors transfer.  *See Ruiz ex rel. E.R. v. United States*, Case No. 13-CV-1241, 2014 WL 4662241, at *11-13 (E.D.N.Y. Sept.

18, 2014) (transferring FTCA case to the Eastern District of Virginia where, among other things, none of the eight Customs and Border Protection officers who had first-hand knowledge of the events resided in New York).

Additionally, although discovery has not commenced, it is apparent from the Complaint that all of the relevant actions or omissions took place in Washington, D.C. and thus the relevant evidence, including investigative files and employee records, would be kept there.

The convenience of the parties also favors transfer.  It would be more convenient for both parties to litigate this case in the District Court for the District of Columbia, where the alleged wrongdoing took place and key witnesses are located.  Additionally, the attorneys litigating the case are located in or near Washington, D.C., and Plaintiff's contacts with the area are significant—he is currently serving as a Congressman in Washington, D.C.; he continues to retain an office in the Longworth House Office Building; and his allegations pertain to acts or omissions that took place in Washington, D.C.

ii.     *The availability of compulsory process.*

Federal Rule of Civil Procedure 45(c)(1)(a) provides that the power to subpoena witnesses for a deposition or trial extends only to "within 100 miles of where the person resides, is employed, or regularly transacts business."  Fed. R. Civ. P. 45.  Accordingly, this Court cannot compel the presence of any necessary witness more than a hundred miles from the courthouse, and witnesses in the Washington, D.C. area are beyond the subpoena power of this Court.  This could preclude the parties from calling any former

government employees as well as the third-party witnesses that may have relevant testimony.

###    iii.    *Local interest in having localized interests decided at home.*

The interests of justice are best served by transferring this action to the district where the primary conduct giving rise to the claims allegedly occurred and related witnesses are located. *See Ruiz*, 2014 WL 4662241, at *11-14 (transferring FTCA case to Eastern District of Virginia where, inter alia, none of the Government's potential witnesses resided in the Eastern District of New York, and only two potential witnesses did). Because all of the challenged conduct occurred in Washington, D.C., there is a local interest in having this suit decided there. By contrast, the Southern District of Texas has no local interest in the matters at issue in this case. Thus, this factor weighs in favor of transfer.

###    iv.    *The forum's familiarity with governing law.*

In examining Plaintiff's FTCA claims, the Court will be required to apply District of Columbia law. 28 U.S.C. § 1346(b)(1). A district court in the District of Columbia is more likely to be familiar with District of Columbia law. Accordingly, this factor also weighs in favor of transfer.

### 3. There is good cause to transfer venue.

A plaintiff's choice of forum is of importance and may only be overcome when the private and public factors clearly point towards hearing the case in the alternative forum. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003). Here, because the private and public factors point towards hearing this case in the District

of Columbia, Plaintiff's choice of forum should be given less weight.  As discussed above, when a movant demonstrates that a transferee venue is clearly more convenient, it has shown good cause, and the district court should therefore grant the transfer.  The United States has satisfied this burden and thus transfer to the District Court for the District of Columbia is warranted.

## CONCLUSION

WHEREFORE, the United States respectfully requests that this Court grant this motion and dismiss this action for lack of subject matter jurisdiction and failure to state a claim or, in the alternative, transfer venue of this case to the District Court for the District of Columbia.

Dated: June 20, 2025                          Respectfully submitted,

                                              Brett A. Shumate
                                              Assistant Attorney General
                                              Civil Division

                                              KIRSTEN L. WILKERSON
                                              Director, Torts Branch
                                              Civil Division

                                              DEBRA R. COLETTI
                                              Acting Deputy Director, Torts Branch
                                              Civil Division


                                              */s/Kristin McGrory*
                                              PHIL MACWILLIAMS
                                              Senior Trial Counsel, Torts Branch
                                              Civil Division (attorney-in-charge)
                                              DC Bar No. 482883
                                              KRISTIN MCGRORY
                                              Trial Attorney, Torts Branch
                                              MD Bar. 0512140251
                                              United States Department of Justice
                                              Civil Division
                                              Benjamin Franklin Station, P.O. Box 888
                                              Washington, D.C. 20044
                                              Telephone: (202) 616-4206
                                              Email: kristin.b.mcgrory@usdoj.gov
                                              Attorneys for Defendant

**<u>CERTIFICATE OF CONFERENCE</u>**

In accordance with Local Rule 7.1, Defendants conferred with counsel for Plaintiff via phone on June 18, 2025, regarding Defendant's motion to transfer venue to the District Court for the District of Columbia.  Plaintiff opposes the motion.

*/s/Kritin McGrory*
KRISTIN MCGRORY

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that on June 20, 2025, I served the foregoing on counsel for Plaintiffs via the CM/ECF Filing System and via email.

*/s/Kristin McGrory*
KRISTIN MCGRORY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

TROY EDWIN NEHLS,

   Plaintiff,

v.            Case No. 3:25-cv-112

UNITED STATES OF AMERICA,

   Defendant.

## **ORDER**

  Before the Court is Defendants' Motion to Dismiss the Complaint or, in the alternative, Defendant's Motion to Transfer Venue, pursuant to 28 U.S.C § 1404, to the District Court for the District of Columbia.  After considering the motions and attached documents, the Court **GRANTS:**

 A. _____the motion to dismiss and **ORDERS** that the case be dismissed.

 B. _____the motion to transfer venue and **ORDERS** that the case be transferred to the District Court for the District of Columbia.

**IT IS SO ORDERED.**

**SIGNED** at Galveston, Texas on this the _____ of June 2025

       _____
       JEFFREY V. BROWN
       UNITED STATES DISTRICT JUDGE